Nathan R. Sobel, S.
Incidental to the settlement of the executors’ account, advice and direction is requested of the court whether specified remaindermen and contingent remaindermen are virtually represented by others who have been made parties to the proceeding. (SCPA 315.)
Virtual representation made applicable to proceedings in the Surrogates’ Courts upon recommendation of the Bennett Commission on Estates (Third Report, 1964, pp 276-297) is a doctrine which permits one who is a party (the "representor”) to represent in a particular proceeding persons or a class of persons ("representees”) who are persons having a future ("remainder”) interest in the estate. If applicable, the statute provides that such representees although ordinarily necessary parties, need not be served with process or made actual parties because they are virtually represented. Such representees may be either adults or infants. If infants (as some are in the instant case) the necessity and expense of a guardian ad litem is avoided.
The doctrine when properly applied complies with the constitutional commands of notice and opportunity to be heard. It is observed however that although such representation may be *391 sanctioned by court order or by affirmative advice and direction of the court, if not properly applied, the resulting decree may nevertheless be subject to direct or collateral attack. (Matter of Silver, 72 Misc 2d 963.)
The whole theory underlying the doctrine is similarity of economic interests. It is presumed that the representor in pursuing his own economic self-interest must necessarily protect the rights of representees having the same interest. (Looker, Virtual Representation, 34 Brooklyn L. Rev. 395; Rodman & Rodman, Virtual Representation: Possible Extensions, ABA Real Property, Probate & Trust Journal [Fall, 1971], pp 281-291.)
Obviously then the nature of the proceeding is often determinative — the same economic interest between representor and representee may exist in one kind of a proceeding but not in a different proceeding although both proceedings may be brought in the same estate. (See, e.g., Matter of Adler, 77 Misc 2d 651; Matter of Fuller, 57 Misc 2d 174.)
Testator created a marital deduction trust for his widow with a general testamentary power to appoint the remainder. With respect to such a trust even before the virtual representation statute expressly so provided (SCPA 315, subd 2, par [b]) it was not necessary to serve "potential appointees.” The representation in such a case is not virtual but actual as it is in this accounting proceeding. The presence of the donee of the power as a party in this proceeding suffices. The potential appointees are not necessary parties.
I
In addition to the marital deduction trust, testator created a residuary sprinkling trust. The income beneficiaries are the wife and testator’s "descendants”. The descendants presently number 16: 5 are children, 11 are grandchildren. Of the two trustees, only the corporate trustee may exercise the income discretion. Up to the present such discretion has been exercised solely for the benefit of the widow.
The income sprinkling provisions in the will created the problem for the executors and perhaps solely influenced the request for advice and direction.
The virtual representation statute recommended to the Bennett Commission on Estates by the Surrogates Association was purposed to solve problems with respect to future ("re *392 mainder”) interests not income interests. In the absence of a statute authorizing one income beneficiary who is made a party to represent virtually another income interest (whether present or successive) all persons having income interests must ordinarily in an accounting proceeding, be served with process as necessary parties.
However, long prior to the enactment of SCPA 315, which allowed virtual representation in proceedings in the Surrogates’ Courts, a statute had permitted such representation in the Supreme Court in proceedings involving inter vivos trusts (Civ. Prac. Act, § 1311, now CPLR 7703; see, also, Ninth Annual Report of NY Judicial Council, 1943, p 311; Judd, Some Phases of Practice in Inter Vivos Trust Accountings in New York, 42 Col L Rev 207). Where representor and representee had the same successive future interests, courts did not hesitate to apply the doctrine of virtual representation although the representor or representee, or both, had also present or successive income interests.
Commenting on this treatment by the courts under the statute then applicable to inter vivos trusts, the Bennett Commission on Estates (Third Report, 1964, p 285) observed: "It is at least arguable that the heading, which is intended to state briefly the subject matter of the statute without getting bogged down in technicalities, includes all remainder interests whether or not coupled with income interests. It is submitted that the criterion should be whether the interests of the class to be represented are likely to be adequately safeguarded. If so, then there would be little reason for denying representation merely because the remainder interest is coupled with an income interest.”
Many decisions since the adoption of SCPA 315 have allowed virtual representation in proceedings in the Surrogates’ Courts where representor or representee or both, in addition to the same interest in remainders also had income interests.
In such cases virtual representation was permitted in some situations. (Matter of Fuller, 57 Misc 2d 174, supra; Matter of Leyshon, 67 Misc 2d 492; Matter of Schwartz, 71 Misc 2d 80; Matter of Adler, 77 Misc 2d 651, supra; Matter of Clark, 79 Misc 2d 864; Matter of Cutting, NYLJ, March 26, 1973, p 17, col 8.)
Other decisions have refused to permit virtual representation in such situations. (Matter of Trigger, 66 Misc 2d 110; Matter of Garfinkel, 62 Misc 2d 791; Matter of Borax, 60 Misc *393 2d 645; Matter of Childs, 129 NYS2d 830; see, also, Matter of Blake, 208 Misc 22 [inter vivos trust].)
The decisions make good sense. It is illogical to exclude from the beneficial purposes of the virtual representation statute, the substantial number of estates where the potential representors and representees have in addition to remainder interests also income interests in the trust. There have been attempts to amend the statute to so provide. But even in the absence of statute, it has been an accepted construction that SCPA 315 applies as well to income interests but only where coupled with remainder interests.
Many of the cited decisions require however that not alone the remainder interests be the "same interest” but also that the income interests be the "same interest”. This was not the intention of the Bennett Commission. As the above-quoted comment observes concerning the presence of an income interest: "the criterion should be whether the interests of the class to be represented are likely to be adequately safeguarded.” In short, where representor and representee have the same remainder interest, the court must examine the income interests of the representor or representee or both, to determine whether such income interests create such a conflict of interest as to make such virtual representation "inadequate” (SCPA 315, subd 6).
Since the test is not the "same interest” in income as it is in remainders but rather adequacy of representation, the income interests need not be successive, i.e., the enjoyment thereof "further limited” upon the happening of a future event.
The interest in income of both representor and representee may be present and concurrent as it usually is in an income sprinkling trust. The fact that both representor and representee may concurrently and presently share in the income does not necessarily create a conflict. True, the representees in the instant case if made parties to the accounting could protest the sprinkling discretion heretofore exercised by the trustee (who is also the executor) solely in favor of the widow. But as observed, neither has such discretion been exercised in favor of the representors who in their capacity as parties and representors could in their own and their children’s economic interest contest the sprinkling discretion as exercised. The test is not whether they will do so or should do so but solely whether they could do so. It would be extremely technical to hold that in this case, the sprinkling provision in the will *394 creates a conflict of interest which could result in inadequate representation. (Matter of Schwartz, 71 Misc 2d 80, supra; Matter of Cutting, NYLJ, March 26, 1973, p 17, col. 8, supra.)
II
We turn to the consideration of the future ("remainder”) interests under the will. The trust will terminate on the death of the widow or on January 1, 1980, whichever is the last to occur. Upon termination, the principal of the trust will be distributed to the testator’s then living "descendants” (now 16 in number plus any issue hereafter born) in equal shares per stirpes. In the remote contingency, that at termination of the trust, there are no such "descendants” then living, then the principal will be paid to the "descendants” of testator’s parents and the descendants of his wife’s parents, in equal shares per stirpes.
We have in this estate two "classes” of remaindermen to whose members a future estate ("remainder”) has been limited. Concerning these, the statute provides with respect to the service of process: "In any contingency to the persons who shall compose a certain class upon the happening of a future event [process need be served only upon] the persons in being who would constitute the class if such event had happened immediately before the commencement of the proceeding.” (SCPA 315, subd 2, par [a], cl [i].)
The first class is the class of testator’s own "descendants”. Under the terms of the will only those "descendants” living at the death of the widow share in the remainder "in equal shares per stirpes.” The quoted term must be construed as providing that only the children of testator living at the widow’s death will take: grandchildren do not share unless their parent has predeceased the widow income beneficiary. (EPTL 1-2.14.)
The second class is the class of "descendants”. of testator’s parents and his wife’s parents. This class takes only if all "descendants” of the testator predecease the widow.
We follow the direction in the statute and presume that the "future event”, the death of the widow, happened immediately before the commencement of the present proceeding. If the widow were now dead only the five living ("in being”) children *395 of the testator would take the remainder interest; not any member of the class of grandchildren or the class of descendants of testator’s and his wife’s parents. The five children of the testator have been made actual parties. The members of the remaining classes as “representees”, may be represented by the five children now in being as "representors” provided there is no conflict of interest or likely inadequacy of representation.
The sole common interest of both the class of representors and the classes of representees in this executor’s accounting proceeding is to assure that the widow’s trust is fully and adequately funded from the assets of the estate. This is the interest of the class of children of the testator. This is the same interest of the class of grandchildren who would share in the principal on the widow’s death if their own parents predecease the widow. And, this is the same interest of the descendants of the parents of testator and his wife who would share in the unlikely event that all "descendants” of testator predeceased the widow.
The court advises the executors that the representors (the five children of testator) may virtually represent both classes of "representees”. The "representees” need not be served with process. Those who are infants need not be represented by a guardian ad litem.
This advice is given at the threshold of this proceeding. Because it is so given, the court repeats the caution it expressed in Matter of Silver (72 Misc 2d 963, 966, supra). If the court makes an error of law in interpreting the statute, it never acquires jurisdiction of the representees. Its decree is subject to direct or collateral attack. Even if the court at the threshold rightly concludes, as it has in this instance, that the statute authorizes virtual representation, there is never any absolute assurance that its decree will not be vulnerable. If in consequence of developments during the proceeding, the decree results in an advantage to the representors vis-á-vis the representees, this is prima facie proof of inadequacy of representation. In short, where the rights of infants or incompetents are concerned, virtual representation never assures the same finality in decree as does representation by a guardian ad litem.